## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

ERIK J. HUTCHINSON,      )
                        )
        Plaintiff,     )
v.                       )     **Case No. CIV-20-382-RAW-SPS**
                        )
KILOLO KIJAKAZI,[1]     )
Acting Commissioner of the Social  )
Security Administration,     )
                        )
        Defendant.    )

## REPORT AND RECOMMENDATION

The claimant Erik J. Hutchinson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled.  For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human*

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-six years old at the time of the administrative hearing (Tr. 42). He completed high school and received auto body training, and has previously worked as an automobile body repairer and welder/pipe fitter (Tr. 19, 261). The claimant alleges inability to work since an amended alleged onset date of July 7, 2016, due to neck problems, arthritis, ADHD, being in a lot of pain, cirrhosis in knees and elbows, and losing cartilage in elbows (Tr. 13, 260).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on June 7, 2017. His applications were denied. ALJ Laura Roberts conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 14, 2020 (Tr. 10-20). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found at step four that the claimant could perform sedentary work as defined in 20 C.F.R.

§§ 404.1567(a) and 416.967(a), except that he could only occasionally climb ramps/stairs, stoop, and balance on uneven, moving, or narrow surfaces.  Additionally, she found he could never climb ropes/ladders/scaffolds, crouch, crawl, kneel, or perform work involving exposure to unprotected heights, extreme cold temperatures, and excessive humidity. Finally, she found the claimant was limited to frequently reaching in all directions in addition to handling and fingering bilaterally (Tr. 16).  The ALJ then concluded at step five that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, touch-up screener, document preparer, and semi-conductor bonder (Tr. 19-20).

## Review

The claimant contends that the ALJ erred by:  (i) failing to properly consider medical opinion evidence in the record, (ii) failing to find that his impairments met a Listing, and (iii) improperly promulgating an inadequate hypothetical to the vocational expert resulting in errant findings at step five.  The undersigned Magistrate Judge agrees with the claimant's first contention, and the case should be remanded.

The ALJ found the claimant had the severe impairments of degenerative disc disease of the cervical spine with a cervical fusion, chronic pain syndrome, psoriasis, obesity, and psoriatic arthritis, as well as the nonsevere impairments of vision problems, depression, and anxiety (Tr. 14).  The medical evidence related to the claimant's physical impairments reveals that the claimant has a history of back and neck pain going back nearly twenty years.  In 2007, he underwent an anterior cervical diskectomy at C4-5 and C5-6 due to cervical discogenic disease with disk protrusion (Tr. 479).  Additionally, he had part of the

third distal finger amputated on his left hand in 2013 (Tr. 345, 529, 558).  In March 2016, he presented to the hospital with neck pain and complaints of ADHD (Tr. 347-348).

The claimant largely received treatment from Dr. Frank Shaw as far back as 2011, and his diagnoses even prior to his alleged onset date of July 7, 2016 included chronic pain syndrome, degenerative disc disease of the cervical spine, osteoarthritis of the knee, and psoriatic arthritis (Tr. 394-451, 508-526, 540-543).  A March 30, 2016 x-ray of the cervical spine revealed C3 through C6 cervical fusion with degenerative changes from C2-3 through C6-7 (Tr. 456).  A September 2018 and October 2019 x-ray of the right knee revealed degenerative changes with suprapatellar fluid collection (Tr. 532, 562).  An x-ray of the left knee showed no acute fracture or dislocation (Tr. 534).  On October 4, 2019, however, an x-ray of the left knee revealed mild osteoarthritis changes most prominent in the medial and patellofemoral compartments, along with suprapatellar minimal effusion (Tr. 561). X-rays of both shoulders on the same day revealed no significant degenerative changes, but did show mild findings (Tr. 563-565).

On July 1, 2019, the claimant was treated by Dr. Divya Akula, who noted he was positive for arthralgias, gait problems, joint swelling, and myalgias (Tr. 611).  She further noted decreased range of motion and swelling of the left and right knee, and left and right ankle (Tr. 612-613).  She assessed him with psoriatic arthritis of both shoulders, elbows, hands, and knees (Tr. 626).

On October 30, 2019, Dr. Shaw completed a Medical Statement of the claimant's ability to perform work, as to his physical impairments (Tr. 689-694).  In it, he indicated that the claimant could lift/carry up to twenty pounds occasionally and never anything

heavier, that he could sit for one hour at a time up to two hours in an eight-hour workday, and that he could stand/walk for thirty minutes to an hour at a time, up to two hours each in an eight-hour workday (Tr. 689-690). He additionally stated that the claimant would need to alternate sitting and standing, and that he has to lie down frequently (Tr. 690). He noted in support the claimant's pain, stiffness, weakness, and fatigue (Tr. 690). He further indicated that the claimant could only occasionally use his hands; only occasionally climb ramps/stairs, balance, and stoop; never kneel, crouch, or crawl; and that he was limited to occasional for most environmental limitations but could never be around extreme humidity/wetness or cold (Tr. 692-693). Finally, as relevant, he indicated that the claimant could not walk a block at a reasonable pace on rough or uneven surfaces (Tr. 694).

On November 3, 2019, Dr. Shaw noted that he had tried to refer the claimant to a rheumatologist in both Muskogee and Tulsa, but that the claimant had been unable to get in with any of them either due to lack of insurance or them not taking new patients (Tr. 542). He indicated that the claimant had difficulty walking on his feet and ankles, and that it was difficult for him to sit more than thirty minutes to an hour (Tr. 542).

On January 30, 2018, Dr. Wojciech Dulowski, M.D. conducted a consultative examination of the claimant (Tr. 499-506). Dr. Dulowski assessed the claimant with history of psoriatic arthritis, history of operated cervical spine, history of morbid obesity, history of ADHD, and tobacco abuse (Tr. 499). Upon exam, the claimant had some limited range of motion of the back but was otherwise within normal range of motion (Tr. 503-506).

As to his physical impairments, state agency physicians determined that the claimant could perform the lift/carry limitations of light work, but that he could only stand/walk four hours in an eight-hour workday and sit for six hours in an eight-hour workday (Tr. 90-91, 114-115).  They found his mental impairments were non-severe (Tr. 88-89, 112-112).

In his written opinion at step four, the ALJ summarized the claimant's testimony as well as most of the medical evidence in the record.  As to his physical impairments, the ALJ noted the claimant's remote history of cervical fusion, psoriasis, psoriatic arthritis, and chronic pain syndrome, as well as the objective testing results in the record including the numerous x-rays (Tr. 17-18).  The ALJ noted that Dr. Dulowski did not opine on the claimant's functional ability, and that the state reviewing physicians found he could perform light work but with a more limited stand/walk (Tr. 18).  He found these opinions not persuasive, stating that the claimant's knee problems and limping gait were consistent with the additional limitation she found in the RFC (Tr. 18).  She further found Dr. Shaw's RFC assessment not persuasive, stating that, as to supportability, Dr. Shaw provided no more than a diagnosis without a proper foundation for his opinion and that it was inconsistent with unspecified evidence in the record and that the diagnostic tests did not reflect significant abnormality (Tr. 18).  The ALJ ultimately concluded that the claimant was not disabled (Tr. 18).

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c.  Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical

opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a) & 416.920c(a).  Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors.  *See* 20 C.F.R. §§ 404.1520c(b) & 416.920c(b).  The factors are:  (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements.").  20 C.F.R. §§ 404.1520c(c) & 416.920c(c).  Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered.  *See* 20 C.F.R. §§ 404.1520c(b)(2) & 416.920c(b)(2).  Generally, the ALJ is not required to explain how the other factors were considered.  *Id.*  However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3) & 416.920c(b)(3).

The regulations discussed above require the ALJ to explain how persuasive he found the medical opinions he considered, and as part of that explanation, also require him to specifically discuss the supportability and consistency factors.  *See* 20 C.F.R. §§ 416.920c(b), 416.920c(c).  The supportability factor examines how well a medical

source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). In this case, the ALJ mentioned both the supportability and consistency factors in rejecting Dr. Shaw's opinion but rejected it as to supportability for failing to provide a proper foundation (despite his years-long treatment relationship with the claimant), and as to consistency for being inconsistent with unspecified evidence as a whole (Tr. 18).

In rejecting Dr. Shaw's opinion *and* all other functional evaluations in the record, the ALJ thus also failed to properly support the RFC after rejecting all opinions in the record. The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) (*citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)). It was error for the ALJ to "pick and choose" his way through the evidence in this record in order to avoid finding the claimant disabled, which appears to be the case based on the transcript from the administrative hearing in which the

vocational expert testified that, *inter alia*, a restriction to occasional handling, fingering, pushing, pulling, and reaching in all directions bilaterally (as opposed to frequent) would eliminate all competitive employment for the claimant (Tr. 67-68). *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") (citation omitted); *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir.1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") (citation omitted).

Because the ALJ failed to properly evaluate Dr. Shaw's opinions, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of all the evidence in the record. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the

case for further proceedings.  Any objections to this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

**DATED** this 7th day of March, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**